**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Luz Elena VALDEZ,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Maria Guadalupe LOMELI–LOMELI,
Defendant-Appellant.**

**Nos. 78–1813, 78–1814.**

United States Court of Appeals,
Ninth Circuit.

Jan. 31, 1979.

As Amended on Denial of Rehearing and Rehearing En Banc March 28, 1979.

---

Howard A. Allen, Asst. U. S. Atty. (on the brief), Michael H. Walsh, U. S. Atty., Howard A. Allen, Asst. U. S. Atty. (argued), San Diego, Cal., for plaintiff-appellee.

Joseph Milchen (argued), San Diego, Cal., for defendant-appellant.

Before ANDERSON and HUG, Circuit Judges, and SOLOMON,* District Judge.

J. BLAINE ANDERSON, Circuit Judge:

## PROCEEDINGS BELOW:

Appellants, Luz Elena Valdez and Maria Guadalupe Lomeli-Lomeli, were each charged with one count of conspiracy to make false statements to the United States (18 U.S.C. §§ 371, 1001) and four counts of making false statements to the United States (18 U.S.C. § 1001).[1] Jurisdiction of the district court was based on 18 U.S.C. § 3231. A jury found Valdez guilty on all five counts, and Lomeli-Lomeli guilty on the conspiracy count and two counts of making false statements. Valdez and Lomeli-Lomeli filed timely notices of appeal. This court's jurisdiction is proper under 28 U.S.C. § 1291.

On appeal, appellants raise various assignments of error involving their Sixth Amendment rights, the materiality of the letters, general evidentiary rulings, and alleged prosecutorial misconduct. We find no error and affirm.

## FACTS

The substance of the charges against the appellants was that they had prepared false employment letters on behalf of Mexican aliens which were submitted to United States Consular authorities. Appellant Valdez was the manager, and appellant Lomeli-Lomeli was an employee, of the San Ysidro Branch of the Bertha Alicia Gonzalez Corporation, an immigration consulting business. At trial, evidence showed that employment letters had been purchased by Mexican nationals from the appellants. These employment letters contained job offers to the aliens promising them jobs in the United States, and were allegedly signed by the United States employer. The letters were used by the aliens when they applied

---

* The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

1. 18 U.S.C. § 1001 provides:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

728

for immigrant visas from the American Consulate office to enter the United States. Neither of the United States employers whose signatures appeared on the letters involved in the present case had actually signed them. Evidence from a documents examiner showed that Lomeli-Lomeli had signed the letters. Lomeli-Lomeli testified that Valdez had given her authority to sign for the employers.

## SIXTH AMENDMENT

█ Appellants claim that the Sixth Amendment right to compulsory process was violated because a material witness was permitted to leave the compulsory process jurisdiction of the court.

One of the employment letters was written on behalf of Mr. Ramos-Zepeda, a Mexican national. Mr. Ramos-Zepeda was interviewed by an Immigration Service investigator at the San Ysidro Port of Entry and then allowed to return to Mexico. Prior to their trial, appellants moved to dismiss the indictment, claiming violation of their Sixth Amendment right to compulsory process. The appellants' motion was denied. Mr. Ramos-Zepeda was present and available to testify at the trial. Neither the government nor the appellants called him to the stand.

Relying on *United States v. Mendez-Rodriguez*, 450 F.2d 1 (9th Cir. 1971), and *United States v. Tsutagawa*, 500 F.2d 420 (9th Cir. 1974), appellants argue that it was error for the district court not to dismiss the indictment. We find that these cases have no application to the present situation where the "missing witness" was present at the trial, and it was questionable whether the government had taken any action which placed the witness beyond the court's compulsory process jurisdiction. Additionally, appellants could not have suffered any constitutional deprivation unless the testimony the witness might have given could conceivably have benefited them. *United States v.*

*Orozco-Rico,* 589 F.2d 433, 435 (9th Cir. 1978).

## MATERIALITY OF THE LETTERS

Appellants contend that the district court erred in determining that the letters contained "material" statements as required by 18 U.S.C. § 1001. They claim the aliens would have been denied admission into the United States for other reasons, so the statements about the job offers in the letters could not be "material" because they were incapable of influencing any decision by the Consulate authorities. Also, as a result of this, appellants claim that it was improper for the district judge to decide the issue of materiality and that the question should have been left to the jury.

█ Materiality is an essential element of the offense prohibited by 18 U.S.C. § 1001. *United States v. Talkington*, 589 F.2d 415, 416 (9th Cir. 1978); *United States v. Deep*, 497 F.2d 1316, 1321 (9th Cir. 1974) (en banc). The test for determining the materiality of the false statement is:

". . . whether the falsification is calculated to induce action or reliance by an agency of the United States,—is it one that could affect or influence the exercise of governmental functions,—does it have a natural tendency to influence or is it capable of influencing agency decision?"

*United States v. East,* 416 F.2d 351, 353 (9th Cir. 1969); *quoted in Talkington, supra,* 589 F.2d at 416; *Deep, supra,* 497 F.2d at 1321. The government has the burden of proving that the false statement has the intrinsic capability of influencing or affecting the agency's or department's decision. *Talkington, supra,* 589 F.2d at 417.

█ Appellants suggest that due to the low wages offered in the letters, and the prior criminal record of one of the applicants, all of the aliens would have been denied visas. They contend that this shows it was "impossible" for the statements to have the capacity or capability of influencing action by a department or agency. This is no defense.[2] In previous cases, this court

2. *See United States v. Quijada,* 588 F.2d 1253, 1255 (9th Cir. 1978), for a general discussion of the impossibility defense in criminal cases.

has adopted the following statement from *United States v. Quirk*, 167 F.Supp. 462, 464 (E.D.Pa.1958), *aff'd* 266 F.2d 26 (3d Cir. 1959):

> "[W]e believe that the conduct Congress intended to prevent by § 1001 was the willful submission to federal agencies of false statements calculated to induce agency reliance or action, *irrespective of whether actual favorable agency action was, for other reasons, impossible.* We think the test is the intrinsic capabilities of the false statement itself, rather than the possibility of the actual attainment of its end as measured by collateral circumstances."

(emphasis added)

*United States v. Goldfine*, 538 F.2d 815, 820–821 (9th Cir. 1976); *Brandow v. United States*, 268 F.2d 559, 565 (9th Cir. 1959).

■ Applying the materiality test from *East, supra*, to the present case, we have no difficulty in concluding that the letters containing fictitious offers of employment were "material." An alien may receive an immigrant visa only if he or she is not likely to become a public charge.[3] (R.T. 1017) To show that one is not likely to become a public charge, an alien can submit an offer of employment from a U. S. employer to the consular authorities. (R.T. 1017–1018) In turn, this may be, and often does, take the form of a letter from the U. S. employer spelling out the job offer. (R.T. 1018) These letters therefore were capable of influencing the consulate authorities in their statutory duty of not granting immigrant visas to anyone who is likely to become a public charge. (8 U.S.C. § 1182(a)(15); (R.T. 1017)).

■ The trial judge found the statement in the letters which says, in effect, "I have a job available for a particular person," to satisfy the materiality element of 18 U.S.C. § 1001. (R.T. 1517) Appellants argue that the materiality issue should have been submitted to the jury. We agree, but conclude that the failure to do so was not reversible error.

Since it is an essential element, materiality, as with all of the other elements of the offense charged, must be determined by the jury. However, in view of the overwhelming evidence against the appellants on the other essential elements, and the fact that the materiality of the statements was so *clearly* established, the failure to submit the issue to the jury was harmless beyond a reasonable doubt under *Chapman v. California*, 368 U.S. 18 (1967). *See United States v. Kostoff*, 585 F.2d 378, 380 (9th Cir. 1978); *United States v. East*, 416 F.2d 351, 355 (9th Cir. 1969). No reasonable jury could have reached any other conclusion.

## EVIDENTIARY RULINGS

■ Appellants contend that the cumulative effect of six evidentiary rulings by the district court constituted reversible error. After examining these rulings we find this assignment of error to be without merit.

## PROSECUTORIAL MISCONDUCT

■ The appellants claim the trial court committed reversible error in failing to object *sua sponte* to two "examination techniques" used by the government. This argument is without merit; neither instance came close to rising to the level of "plain error" required by F.R.Crim.P. 52(b).

## CONCLUSION

The judgment of the district court is AFFIRMED.

---

3. 8 U.S.C. § 1182(a) provides:

". . . the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:

". . .

"(15) Aliens who, in the opinion of the consular officer at the time of application for a visa, or in the opinion of the Attorney General at the time of application for admission, are likely at any time to become public charges;"