962 F.2d 15
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Raquel VALENCIA-VARGAS, Defendant-Appellant.
 No. 91-50216.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 7, 1992.
Decided May 7, 1992.
 
 Before BOOCHEVER, WILLIAM A. NORRIS and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 U.S. Customs officials stopped Carrillo-Hernandez and Valencia-Vargas at the San Ysidro border checkpoint as they were leaving the United States for Mexico. Agent Unzuneta, a native speaker of Spanish, asked the two defendants, both native speakers of Spanish, whether they were "carrying money in excess of ten thousand dollars." The question was in Spanish: Agent Unzuneta used "dinero" for "money" and "dolares" for "dollars." Both defendants responded in the negative.
 
 
 3
 Defendants were referred to the secondary inspection. An inspector asked Hernandez to hand over his wallet. The inspector noticed some dollar bills in the wallet and asked whether Hernandez had any more money. Hernandez first responded in the negative. After a pause, he said "No U.S. money, just Mexican money." He then produced Mexican pesos worth over 31,000 dollars in U.S. equivalent.
 
 
 4
 Defendants were charged with making a false statement to a federal officer, knowingly transporting money without making a report and structuring financial transactions. At trial, they were convicted of the first charge and acquitted of the second. The government dismissed the third charge with prejudice after the jury failed to reach a decision on this charge.
 
 
 5
 Vargas challenges her conviction on three grounds. First, she argues that the "exculpatory no" doctrine constitutes an affirmative defense to the crime with which she was charged. Second, she argues that there was insufficient evidence to support a jury finding of materiality. Third, she argues that she was asked an inherently ambiguous question. In this memorandum disposition, we deal only with Vargas' challenge to her conviction. In a separate opinion, we consider Vargas' and Hernandez' challenges to their sentences. See United States v. Carrillo-Hernandez, No. 91-50213, slip. op. ______ (May __, 1992).
 
 
 6
 * Vargas first argues that her conviction must be reversed because, under the exculpatory no doctrine, her false statement could not have exposed her to criminal liability. We do not decide whether Vargas was entitled to the "exculpatory no" defense because Vargas' counsel failed to raise this issue below. See United States v. Hayden, 860 F.2d 1483, 1485 (9th Cir.1988) ("As a general matter, a party must raise an objection initially to the trial court to preserve it for appeal."). As a general rule, we have the discretion to reach purely legal issues that were not raised below. However, we decline to do so here because, in determining whether the "exculpatory no" defense is applicable, we must apply the five-factor test articulated in United States v. Alzate-Restrepo, 890 F.2d 1061 (9th Cir.1989), each factor of which turns on facts peculiar to this case.
 
 II
 
 7
 Vargas next argues that there was insufficient evidence to support a jury finding of materiality. Vargas was convicted of 18 U.S.C. § 1001 for making a false statement to a federal officer. Materiality is an element of the offense. United States v. Valdez, 594 F.2d 725, 728 (9th Cir.1979). A statement is material within the meaning of 18 U.S.C. § 1001 if it has the potential of affecting the actions of a government department or agency. United States v. East, 416 F.2d 351, 353 (9th Cir.1969). We normally review the jury's finding of materiality for sufficiency of evidence under Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 8
 Vargas argues that the jury's finding of materiality was erroneous. Vargas argues that the materiality requirement could not have been satisfied because the customs agents were intending to search the car regardless of what she said. Implicit in Vargas' argument is the view that a statement cannot be material if it did not affect the actions of the government agency in that particular case, even if it has the potential of affecting the actions of a government agency in general.
 
 
 9
 The record indicates that Vargas is correct with respect to the facts: Agent Unzuneta testified, "We were informed by other agents that were on surveillance that a burgundy colored Taurus would probably be headed towards Mexico and that we were to stop the vehicle before it entered the Republic of Mexico and to take a Customs declaration and subsequently search the car." This testimony supports Vargas' claim that the government agents were intending to search the car, regardless of Vargas' answer. Plainly the search would have revealed the money.
 
 
 10
 We reject, however, Vargas' argument that a statement cannot be material if it did not affect the actions of the government agency in that particular case. Vargas' argument is foreclosed by United States v. Valdez, 594 F.2d 725 (9th Cir.1979). Valdez involved a false statement in the course of a visa application. In Valdez, just as here, the defendant contended that it was impossible for the false statements to have the capacity or capability of influencing action by a government official because the visas would have been denied regardless of the false statements. Relying on and quoting from United States v. Goldfine, 538 F.2d 815, 820-21 (9th Cir.1976), we said:
 
 
 11
 [W]e believe that the conduct Congress intended to prevent by § 1001 was the willful submission to federal agencies of false statements calculated to induce agency action, irrespective of whether actual agency action was, for other reasons, impossible. We think the test is the intrinsic capabilities of the false statement itself, rather than the possibility of the actual attainment of its end as measured by collateral circumstances.
 
 
 12
 Valdez, 594 F.2d at 729 (emphasis in original). We then concluded that the false statements satisfied the materiality requirement because they had the "intrinsic" capability of misleading a government official. Id. Just as in Valdez, here, too, Vargas' statement satisfy the materiality requirement because they had the "intrinsic" capability of misleading the customs officials, regardless of whether favorable government action was, for other reasons, not forthcoming. Accordingly, Vargas' second challenge fails.
 
 III
 
 13
 Vargas also argues that her conviction for making a false statement must be reversed because she was asked an ambiguous question. As a general rule, the fact that there is some ambiguity in a falsely answered question will not shield the respondent from a perjury or false statements prosecution. United States v. Slawik, 548 F.2d 75, 86 (3rd Cir.1977). Normally, it is for the jury to decide which construction the defendant placed on a question. Id. However, these general rules are not without a limit. If a question is excessively vague or fundamentally ambiguous, the Third Circuit has held that the answer to such a question may not, as a matter of law, form the basis of a perjury or false statement prosecution. United States v. Ryan, 828 F.2d 1010, 1015 (9th Cir.1987).
 
 
 14
 In Ryan, the Third Circuit noted that it is difficult to determine with precision when a question becomes ambiguous as a matter of law. The court determined that this point is reached when it is entirely unreasonable to expect that the defendant understood the question or when persons of ordinary intellect cannot agree on the question's meaning. Id. at 105.
 
 
 15
 Although we have not found a Ninth Circuit case on point, we need not decide whether we should adopt the Third Circuit's test because Vargas' challenge would fail even if we were to adopt that test. The question Vargas was asked is not so ambiguous that persons of ordinary intellect could not agree on its meaning. Vargas was asked whether she had "any money (dinero) in excess of ten thousand dollars." Vargas claims that the question is ambiguous because one could have easily thought that an affirmative response is required only if one is carrying more than ten thousand dollars. It is not readily apparent, she contends, that the question is meant to include the equivalent of United States dollars in other currencies. Vargas might have prevailed if she had been asked whether she had "more than ten thousand dollars." However, Vargas was asked whether she had money in excess of ten thousand dollars. Money refers to both Mexican pesos and United States dollars. The question was not ambiguous.
 
 
 16
 In light of the foregoing, we AFFIRM Vargas' conviction.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3