42 F.3d 1403
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Maria C. DURAN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lilia VAZQUEZ, Defendant-Appellant.
 Nos. 93-50418, 93-50421.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 1, 1994.
Decided Dec. 1, 1994.
 
 Before: BROWNING, FARRIS, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 In a published opinion we affirmed several rulings by the district court, but reversed Maria Duran's and Lilia Vazquez's three level sentence increase for conspiracy and perjury. We now resolve the remaining issues.
 
 I.
 
 3
 Lilia Vazquez contends that counts four and five of the indictment are multiplicitous. We disagree. "An indictment is not multiplicitous if each count requires proof of a fact which the other does not." United States v. Roberts, 783 F.2d 767 (9th Cir.1985). Count four alleges that Vazquez falsely testified that she loaned $80,000 to the Durans. Count five alleges that Vazquez falsely testified that the money she loaned to the Durans came from her savings. Thus, the government had to prove two distinct facts: that Vazquez did not make the loan and that Vazquez did not have the savings to make the loan.
 
 II.
 
 4
 Appellants contend that the district court erred when it refused to separate appellants' trial from Macario Duran's trial. We note initially that Fed.R.Crim.P. 8(b) permits the joinder of defendants "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." The prosecution alleged that Maria Duran and Lilia Vazquez were involved with Macario Duran's efforts to conceal the income derived from Macario's illegal activities. Joinder of defendants was therefore permissible, even if Lilia Vazquez and Maria Duran were not involved in Macario Duran's theft and drug offenses. See United States v. Sanchez-Lopez, 879 F.2d 541, 555 (9th Cir.1989) (holding joinder was proper where district court joined drug charges with transportation of illegal alien counts).
 
 
 5
 If joinder of defendants is permissible under Rule 8(b), Rule 14 provides for a severance "[i]f it appears that a defendant ... is prejudiced by a joinder of offenses or of defendants." To overturn a district court's denial of a motion to sever, appellants must prove a "clear, manifest, or undue prejudice from the joint trial" and that the prejudice "is of such a magnitude that the defendant[§ were] denied a fair trial." United States v. Vasquez-Velasco, 15 F.3d 833, 845-46 (9th Cir.1994) (citations and internal quotations omitted). Maria Duran and Lilia Vazquez have not met this burden of proof. They have not shown that they were clearly prejudiced or denied a fair trial by the denial of severance. Nor have they shown that the jury was incapable of weighing the evidence against each defendant separately. United States v. Sherlock, 962 F.2d 1349, 1360 (9th Cir.1992), cert. denied 113 S.Ct. 419 (1992). During the trial, the district court required the government to specify the relevance of a witness's testimony when the jury might mistakenly apply that testimony to the wrong defendant. See United States v. Vasquez-Velasco, 15 F.3d at 845 (noting that trial judge carefully instructed the jury that certain evidence should not be considered against one of the defendants). The jury instructions reminded the jury to consider the charges against each defendant separately. Finally, the district court ruled that evidence of Macario Duran's illegal activities would have been admissible in a separate trial. See United States v. Sitton, 968 F.2d 947, 961 (9th Cir.1992) (affirming the district court's denial of severance in part because the evidence would have been admissible in a separate trial), cert. denied, 113 S.Ct. 1306 (1993).
 
 III.
 
 6
 Maria Duran and Lilia Vazquez contend that they should have been permitted to introduce surrebuttal testimony regarding Lilia Vazquez's lack of fluency in English. A trial court has broad discretion to exclude surrebuttal evidence. United States v. McCollum, 732 F.2d 1419, 1426 (9th Cir.1984), cert. denied, 469 U.S. 920 (1984). The appellants had raised the issue of Lilia Vazquez's English fluency during their case-in-chief and could have called their expert witness at that time. Id. Furthermore, Vazquez's ability to speak English was a collateral issue and did not form the basis for the perjury charge. Excluding the surrebuttal testimony did not violate appellants' due process rights or their Sixth Amendment Rights.
 
 IV.
 
 7
 Maria Duran contends that the evidence was insufficient to support her conviction for conspiracy to obstruct justice and commit perjury. When considering a challenge to the sufficiency of evidence, we determine whether, "after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the [conspiracy] beyond a reasonable doubt." United States v. Delgado, 4 F.3d 780, 783 (9th Cir.1993) (internal quotations and citations omitted).
 
 
 8
 To prove a conspiracy, the government must show an agreement to engage in criminal activity coupled with one or more overt acts in furtherance of the conspiracy. United States v. Buena-Lopez, 987 F.2d 657, 659 (9th Cir.1993). The government need not prove a formal agreement. Instead, "the agreement may be inferred from the defendants' acts pursuant to the scheme, or other circumstantial evidence." United States v. Disla, 805 F.2d 1340, 1348 (9th Cir.1986). Because there is no direct evidence of an agreement, we must consider the circumstantial evidence and facts surrounding Lilia Vazquez's perjury.
 
 
 9
 On October 3, the federal investigators interviewed Maria and Macario Duran. During the interview, Macario Duran told the investigators that Lilia Vazquez loaned the Durans $80,000 to help pay for the Northridge home. Several hours after interviewing the Durans, the federal investigators also interviewed Lilia Vazquez. Vazquez denied having made an $80,000 loan and had no knowledge that the Durans' purchased the Northridge home. Three days after investigators interviewed the Durans and Vazquez, a trust deed showing that Lilia Vazquez had an $80,000 interest in the Northridge house was recorded at the Los Angeles County Recorder's office. Three months later, Vazquez appeared before a grand jury and testified that she had loaned the Durans $80,000 and the money came from her savings. At trial, federal investigators testified that Vazquez's financial records showed that Vazquez did not make the loan to the Durans. In a confusing response, Vazquez testified that she had tens of thousands of dollars hidden in such places as old boots and jacket pockets, although she changed the location and dollar amount throughout her testimony. From these facts, a rational juror could infer that the Durans told Vazquez about the false loan after the federal investigators interviewed Vazquez, and that Vazquez agreed to change her story to protect the Durans.
 
 
 10
 Once an agreement has been established, little evidence is required to connect Maria Duran to the conspiracy. United States v. Lester, 749 F.2d 1288, 1297 (9th Cir.1984).
 
 
 11
 Although the evidence is sufficient to support a conspiracy conviction, it is insufficient to support Maria Duran's conviction for aiding and abetting Lilia Vazquez's perjury. The government must show that Maria Duran "intentionally assisted" in the illegal conduct. United States v. Vasquez-Chan, 978 F.2d 546 (9th Cir.1992). The only evidence that might support an aiding and abetting charge is the recording of the trust deed three days after federal investigators interviewed the Durans and Vazquez. The trial record does not show who recorded the deed. Nothing in the record provides a basis for a finding that Maria Duran intentionally assisted Vazquez's perjury.
 
 V.
 
 12
 Maria Duran contends her convictions on the structuring counts must be reversed in light of United States v. Ratzlaf, 114 S.Ct. 655 (1994). The government agrees. We therefore reverse her convictions on those counts.
 
 VI.
 
 13
 Maria Duran contends that the evidence is insufficient to convict her of making a false statement on a loan application in violation of 18 U.S.C. Sec. 1014. The government must prove five elements to establish a violation of Sec. 1014.[1] Maria Duran asserts that the government failed to show (1) the materiality of her false statements and (2) her intent to influence the savings and loan.
 
 
 14
 A statement is material if it has the "capacity to influence the lending institution." United States v. Smith, 891 F.2d 703 (9th Cir.1989). A statement need not actually influence a decision to be material. See U.S. v. Facchini, 832 F.2d 1159, 1162 (9th Cir.1987) (interpreting 18 U.S.C. Sec. 1001). The loan officer who handled the Northridge transaction testified that one of the main requirements for the loan was proof of "verified funds on deposit." A rational jury could conclude that Maria Duran's false statements on the loan application, verified by a falsified photocopy of the passbook, had the capacity to influence the savings and loan's decision. A rational jury could also conclude Maria Duran made the statements with the intent to influence the savings and loan's decision. Only by falsifying the passbook could the Durans have shown sufficient and verified cash assets needed to qualify for the loan.
 
 VII.
 
 15
 Maria Duran contends that the district court improperly increased her sentence for loan fraud by nine levels because the presentence report overvalued the savings and loan's actual loss on the loan. The presentence report indicates that the Northridge home had multiple liens against it, including pending government forfeiture proceedings. The report concludes that the savings and loan would recover little or no money from the loan. These findings are not clearly erroneous.
 
 
 16
 Maria Duran also contends that the nine-level increase is erroneous because she intended to pay back the loan. Adjustments under Sec. 2F.1, however, are based upon the greater of actual or intended loss. United States v. Shaw, 3 F.3d 311, 312-13 (9th Cir.1993). The actual loss to the savings and loan is greater than $350,000. The nine-level adjustment is appropriate.
 
 VIII.
 
 17
 Maria Duran contends the district court improperly adjusted her sentence upward by four levels for knowing that the funds she laundered were criminally derived. U.S.S.G. Sec. 2S1.3(b)(1). We disagree. There is substantial evidence in the record from which the district court could infer that Maria Duran knew her husband had unlawfully obtained the cash. Furthermore, Maria Duran herself was convicted of failing to report to the IRS all the income she earned from her beauty salon business. To conceal this income as well as Macario's income, the Duran's opened several different bank accounts, purchased items primarily with large sums of cash and cashier's checks, and structured cash transactions to avoid having financial institutions file Currency Transaction Reports with the IRS.
 
 
 18
 AFFIRMED in PART; REVERSED in PART.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The essential elements under section 1014 are: (1) the defendant made a false statement to a bank, (2) the defendant made the statement to influence the bank's action, (3) the defendant knew that the statement was false, (4) the statement concerned a material fact, and (5) the bank's deposits were federally insured. Theron v. United States Marshal, 832 F.2d 492, 496-97 (9th Cir.1987), cert. denied, 486 U.S. 1059 (9188)